UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN RENE OKA,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:21-cv-01569-JLT-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 18, 19)<br><br>FOURTEEN-DAY OBJECTION DEADLINE |

Robin Rene Oka ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 18-19). For the reasons stated, the undersigned RECOMMENDS granting Plaintiff's motion for summary judgment, denying the Commissioner's cross-motion for summary judgment, and remanding for further administrative proceedings.

////

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(15) (E.D. Cal. 2022).

# I. JURISDICTION

Plaintiff protectively filed for disability insurance benefits on May 18, 2018, alleging an onset date of May 10, 2018. (AR 273-79). Benefits were denied initially (AR 111-15) and upon reconsideration (AR 117-22). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 10, 2020, and another hearing on February 22, 2021. (AR 43-83). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 18-42) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g).

# II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 59 years old at the time of the first hearing. (AR 50). She obtained her GED and testified that she went to "college." (AR 50, 324). Plaintiff testified that she lives with her niece. (AR 53). She has work history as a medical records clerk. (AR 50-51, 64). Plaintiff testified that she stopped working because of anxiety, headaches, pain in her ankle and knee joints, vertigo, and osteosclerosis. (AR 53). She reported that she has panic attacks, daily headaches, depression, and vertigo that causes her to fall about four times a week. (AR 54-55). Plaintiff testified that she was prescribed an orthotic brace for her right foot that she wears daily. (AR 56). She can stand in one place for five to ten minutes and has constant swelling in her feet that requires her to elevate her leg three to four hours every day. (AR 56-57). Plaintiff reported that she gets three hours of sleep per night, has difficulty being around large groups of people because of anxiety, and starts crying or yelling for no reason. (AR 58-59).

# III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must

find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.   ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 10, 2018, the alleged onset date. (AR 23). At step two, the ALJ found that Plaintiff has the following severe impairments: arthritis; heel spurs and plantar fasciitis; degenerative disc disease and lumbar spondylosis; right knee osteoarthritis; obesity; anxiety disorder not otherwise specified; and depressive disorder not otherwise specified. (AR 24). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 24). The ALJ then found that Plaintiff has the RFC to

> perform medium work as defined in 20 CFR 404.1567(c) except she can occasionally climb stairs and ramps, but she can never [climb] ladders, ropes, and scaffolds. She can occasionally balance and frequently stoop and crouch. She should avoid unprotected heights, moving mechanical parts, and driving. She should have only occasional exposure to extreme heat. She can occasionally operate foot controls. She is limited to tasks that could be learned in up to six months on the job. She can adapt to occasional changes in a routine work setting. She can have only occasional work interactions with the public. She is limited to simple, routine tasks.

(AR 26). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 32). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packer, order seller, and janitor. (AR 33). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security

5

Act, from May 10, 2018, through the date of the decision. (AR 33).

## VI.  ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered Plaintiff's subjective complaints, and therefore incorporated all of Plaintiff's work-related limitations into the RFC consistent with the nature and intensity of Plaintiff's limitations. (Doc. No. 18 at 8-12).

## VII.  DISCUSSION

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing her RFC because she failed to offer clear and convincing reasons for rejecting her subjective complaints specifically as to her foot and ankle pain. (Doc. No. 18 at 9-12). An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the

6

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (AR 27).

First, the ALJ found that treatment for Plaintiff's claimed knee, ankle, and feet impairments has been limited since the alleged onset date. (AR 27). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for rejection of Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.

In support of this reason, the ALJ found as follows:

> The claimant was prescribed pain medication, gabapentin, and Medrol Dose Pack and she received some physical therapy. The claimant was referred to podiatry, but there is no evidence that she has received specialized treatment since the alleged onset date of disability. The claimant testified that she previously received injections for her right ankle and knee, but that she had not received injections in three years. The claimant was also sent for x-rays of her right foot and ankle, but there is no evidence that she followed through with the x-rays. While claimant reported significant falling episodes, there is no evidence that she sought treatment for injuries sustained in falls.

(AR 27). Plaintiff argues this is not a clear and convincing reason to discount Plaintiff's symptom claims, particularly regarding her claimed ankle and feet impairments. (Doc. No. 18 at 9-11). The Court agrees. As noted by Plaintiff, the record does not support the ALJ's conclusory finding that Plaintiff "did not receive specialized treatment" after referral to a podiatrist. (*Id*. at 9-10). Instead, Plaintiff saw two different podiatrists, one of whom recommended that she undergo physical therapy for her ankle related symptom claims; and she consistently attended physical therapy from April 2020 through October 2020. (AR 866-918). The ALJ does not cite, nor does the Court discern, any additional "specialized treatment" that was prescribed for Plaintiff outside of the recommendations of her treating podiatrist. In particular, regardless of the ALJ's general reference to Plaintiff "previous" injections for her right ankle and knee, the ALJ points to no evidence in the record that injections for her ankle or knee were recommended during the relevant adjudicatory period.

The ALJ further attempts to support this reasoning by noting "there is no evidence [Plaintiff] followed through with x-rays." (AR 27). However, the records cited by the ALJ in apparent support of this argument do not reference x-rays of Plaintiff's right foot and ankle, rather, they include an August 2019 consultative examination noting x-rays of Plaintiff's right knee were "normal" and a podiatrist had previously diagnosed arthritis, heel spurs, and plantar fasciitis; 2019 treatment records noting referral to podiatrist, "clubfoot", lack of pain, and largely normal musculoskeletal findings on examination; and several physical therapy treatment notes. (AR 27 (citing AR 557, 644, 646, 650, 753, 770, 869). Instead, as noted by Plaintiff, the only records cited by the ALJ that do reference foot and ankle x-rays tend to support a finding that Plaintiff did, in fact, follow through on getting x-rays, as she was sent by her first podiatrist to get

x-rays in March 2020, and she brought them to a second podiatrist for review in April 2020. (AR 712-13, 844 ("she brings in x-rays for evaluation")). Finally, the ALJ noted that there was no evidence that Plaintiff sought treatment for injuries sustained in falls, despite Plaintiff's reports that she had "significant falling episodes." (AR 27). As Plaintiff has not asserted any impairments related to falls sustained as a result of her alleged ankle and foot symptom claims, the Court declines to consider any attenuated failure to seek treatment as evidence that Plaintiff failed to seek treatment for her claimed ankle and foot pain. Moreover, as noted by Plaintiff, she testified that she fell and bruised herself (AR 54), not that she sustained falls "so significant that she would require treatment." (Doc. No. 18 at 10). Based on the foregoing, the ALJ's rejection of Plaintiff's symptom claims based on a lack of treatment for her claimed ankle and foot impairments was not clear, convincing, and supported by substantial evidence.

Second, the ALJ generally found Plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations. (AR 29). The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this argument, the ALJ cited a single report by Plaintiff at a 2019 consultative examinations that she does her own cooking and cleaning, shops, and "performs her activities of daily living without assistance"; one report that she does crosswords and coloring; and a handful of treatment records noting that Plaintiff lives alone, in contrast with her report at the hearing that she lives with her niece. (AR 29) (citing 558, 571, 645, 921).

However, the Court's review of the same records cited by Defendant also indicate that in

1  2019 Plaintiff reported her niece did the shopping and cooking and Plaintiff helps "as much as
2  she can" depending on pain. (AR 571). Similarly, Plaintiff testified at the first hearing that her
3  niece does the grocery shopping, cooking, and cleaning; and Plaintiff's niece testified that she
4  "basically does everything for [Plaintiff]" including cooking, laundry, and helping Plaintiff when
5  she walks around because "she falls." (AR 53-54, 62-63). Finally, the ALJ did not identify the
6  specific testimony that she found not to be credible, nor did she offer explanations for why the
7  cited evidence of Plaintiff's ability to perform basic activities of daily living undermines
8  Plaintiff's symptom claims, particularly as to her claimed feet and ankle impairments. *Holohan*,
9  246 F.3d at 1208 (when considering plaintiff's symptom claims, the ALJ must specifically
10 identify the statements he finds not to be credible, and the evidence that allegedly undermines
11 those statements); *Brown-Hunter*, 806 F.3d at 494. For all of these reasons, the ALJ's conclusory
12 finding that Plaintiff's daily activities were generally inconsistent with Plaintiff's "allegations of
13 disabling symptoms and limitations" was not a clear and convincing reason, supported by
14 substantial evidence, to discount her symptom claims.

15  Third, the ALJ found the "objective findings, diagnostic studies, treatment modalities, and
16 the treatment record as a whole do not demonstrate that [Plaintiff's] impairments are disabling."
17 (AR 27). In support of this finding the ALJ cites a consultative examination[2] noting that Plaintiff
18 was easily able to get up out of the chair and walked at normal speed; no redness, heat, swelling,
19 tenderness, effusions, ligamentous laxity, or crepitus in her knees; normal range of motion in her
20 knees and ankles; full strength in her extremities; and normal gait and station. (AR 27, 558-60).
21 The ALJ also cited several examination of Plaintiff's ankle noting no limitation or pain on range
22 of motion testing, no tenderness on palpation, and ability to bear weight on her right ankle

---

[2] Defendant additionally argues that in considering Plaintiff's physical symptom claims, the ALJ "relied more" on the examining medical opinion of Dr. Roger Wagner. (Doc. No. 19 at 10 (citing AR 557-62)). However, the Court notes the ALJ found Dr. Wagner's opinion only partially persuasive. (AR 30). Moreover, the Court is not permitted to consider this reasoning as it was not offered by the ALJ in the decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

without any pain. (AR 27, 650, 655, 724). Plaintiff generally argues "the ALJ disregarded substantial objective evidence in her analysis of [Plaintiff's] subjective complaints." (Doc. No. 18 at 9) . However, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and deny benefits *solely* because the degree of pain alleged is not supported by objective medical evidence. (Doc. No. 16 at 9); *Rollins*, 261 F.3d at 857 (emphasis added); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. As discussed above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by substantial evidence. Thus, because lack of corroboration by the objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

The Court concludes that the ALJ did not provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. On remand, the ALJ must reconsider Plaintiff's symptom claims, particularly as to her claimed foot and ankle impairments.

### VIII.   CONCLUSION

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ should reevaluate Plaintiff's symptom claims. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 18) be GRANTED.

2.    Defendant's Cross Motion for Summary Judgment (Doc. No. 19) be DENIED.

3.    Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.

4.    The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    January 9, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE